IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SATISH K. NARANG <br> 10010 Bluebell Way <br> Laurel, Maryland 20723 <br><br> and <br><br> SHASHI R. NARANG <br> 10010 Bluebell Way <br> Laurel, Maryland 20723 <br><br> Plaintiffs, <br><br> v. <br><br> TRUIST FINANCIAL CORPORATION <br> d/b/a Truist Bank <br> 214 North Tryon Street <br> Charlotte, North Carolina 28202 <br><br> <u>SERVE ON:</u> <br> CSC-LAWYERS INCORPORATING <br> SERVICE COMPANY <br> 7 Saint Paul Street <br> Suite 820 <br> Baltimore, Maryland 21202 <br><br> and <br><br> JP MORGAN CHASE BANK, N.A. <br> d/b/a Chase Bank <br> 1111 Poloris Parkway <br> Columbus, Ohio 43240 <br><br> <u>SERVE ON:</u> <br> THE CORPORATION TRUST <br> INCORPORATED <br> 2405 York Road <br> Suite 201 <br> Lutherville Timonium, Maryland 21093 <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> Civil Action No. _____ <br> * <br> * <br> **JURY TRIAL DEMANDED** <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

* * * * * * * * * * * * * *

## COMPLAINT

Plaintiffs, Satish K. Narang and Shashi R. Narang, by their undersigned counsel, sue Truist Financial Corporation, doing business as Truist Bank, ("Truist") for honoring a plainly forged check in violation of the Maryland Uniform Commercial Code and for breach of contract and JP Morgan Chase Bank, National Association ("Chase") for negligent handling of the same forged check.

## PREFATORY STATEMENT

1. This action is about the complete and utter failure of Truist to exercise ordinary care in honoring a clearly forged check and wrongfully depriving Plaintiffs of $80,000.00. It is a cautionary tale displaying the disastrous results when the drawee bank fails to employ appropriate safeguards against fraud. It also illustrates that Truist's Mission Statement – "Truist, our purpose is to inspire and build better lives and communities. And we do this through real, unwavering care. Care that creates more opportunities, lends a helping hand, and encourages people and businesses to thrive" – is a marketing gimmick, utterly devoid of substance. Through its astonishing lack of care, Truist seeks to devastate financially an elderly couple who trusted it to safeguard their retirement savings.

2. The same goes for Chase, which as the depositary bank, also had a duty to inquire as to obviously forged check before blindly accepting it.

3. Satish Narang and Shashi Narang are an elderly retired couple, aged 86 and 80, respectively, who wrote and mailed a check from their Truist account to the Internal Revenue Service ("IRS") to pay their taxes. In transit, the check was stolen and altered by an individual purporting to be Oscar Guzman. In altering the check, the individual did not

2

include the date or even attempt to disguise the fraud by mimicking Mr. Narang's handwriting. The altered portions of the check, including the "payable to" line and the accompanying endorsement, look markedly different from the portions of the check completed by Mr. Narang.

4. In an attempt to justify its failure to exercise ordinary care in reviewing the check before honoring it, Truist hides behind the contention that Plaintiffs failed to timely inform the bank of the fraudulent activity. As described herein, this is not a defense to Truist's lack of good faith and standard of care.

5. As such, Plaintiffs seek relief under various provisions of the Maryland Uniform Commercial Code ("UCC") and Maryland's Consumer Protection laws. The relief sought includes allocating the entire loss to Truist and reimbursing Plaintiffs for the entire $80,000.00 loss plus other available monetary remedies.

## PARTIES

6. Plaintiffs, Satish K. Narang and Shashi R. Narang, are individuals who reside at 10010 Bluebell Way, Laurel, Maryland 20723.

7. Defendant Truist Financial Corporation, is a North Carolina corporation that maintains its principal place of business at 214 North Tryon Street, Charlotte, North Carolina 28202. Truist is not a closely held corporation.

8. Defendant JP Morgan Chase Bank, National Association is a Delaware corporation that maintains its principal place of business at 1111 Poloris Parkway, Columbus, Ohio 43240. JP Morgan Chase Bank is not a closely held corporation.

4862-1482-6699, v. 1

## JURISDICTION

9. Truist has purposely established significant contacts in the State of Maryland by doing business as a banking institution in the state and has carried out, and continues to carry out, substantial, continuous, and systematic business in Maryland.

10. Likewise, Chase has purposely established significant contacts in the State of Maryland by doing business as a banking institution in the state and has carried out, and continues to carry out, substantial, continuous, and systematic business in Maryland.

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the jurisdictional threshold, exclusive of costs, is between citizens of different states, and Defendants have sufficient contacts with Maryland such that the maintenance of this suit in this district does not offend traditional notions of fair play and substantial justice.

12. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise this claim occurred in the State of Maryland.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13. Plaintiffs have been customers at all times relevant to this dispute. In or around September 2023, Truist updated its Bank Services Agreement ("BSA"). Truist updated its BSA again in February 2024.

14. On or about December 22, 2023, Satish Narang wrote a check, No. 1895, drawn on Plaintiffs' Truist account, payable to the IRS in the amount of $80,000.00. Mr. Narang mailed the check to the IRS through the United States Postal Service ("USPS").

15. During transit of the check from Mr. Narang to the IRS, the check was intercepted by a criminal, significantly altered by the criminal, and fraudulently presented by and paid to the criminal to Chase. The check no longer read that it was payable to the IRS but rather to an unknown "Oscar Guzman." Additionally, the date on the check was partially deleted so that it just read "12" instead of the full date that Mr. Narang originally affixed.

16. Moreover, the handwriting of the altered portions of the check, plus the endorsement, appear markedly different than Mr. Narang's handwriting. The handwriting on the altered check on the "payable to" line matches exactly the endorsement of "Oscar Guzman" on the back of the check.

17. Here is an image of the front and back of the fraudulently altered check:

![Image of altered check showing: SATISH K NARANG, SHASHI R NARANG, 10010 BLUEBELL WAY, LAUREL, MD 20723-6034, check #1895, Date: 12, Pay to the Order of: Oscar Guzman, $90,000, Eighty Thousand and —, TRUIST, ELITE GOLD, signature, #01895]

5



18.     Sometime in December 2023, the criminal cashed the altered $80,000.00 check.

19.     When the criminal presented the check to Chase as the depositary bank, Chase failed to exercise any care in determining that the check was plainly forged before requesting the funds from Truist as the drawee bank.

20.     Additionally, before honoring the check, Truist failed to exercise ordinary care before issuing payment on the altered check.  The check, to the plain eye, was obviously altered before Truist issued payment.  More pointedly, Truist did not pay the check "in good faith" because it failed to exercise the requisite standard of care. Truist did not flag the check for additional scrutiny due to its being of an unusually high dollar amount compared to Plaintiffs' transactional history, in violation of the duty of ordinary care. Truist honored the check despite the fact that it was undated, in violation of the duty of care and its own policies. Truist honored the check despite the fact that the handwriting of the payee line and the endorsement clearly was not of either of the Plaintiffs, in violation of the duty

4862-1482-6699, v. 1

of ordinary care. And Truist did not simply pick up the phone and call its customers to inquire about these anomalies, in violation of the duty of ordinary care.

21. Of course, Plaintiffs were unaware of any of this at the time. When they received their January 19, 2024 account statement from Truist, they reviewed it and saw that the $80,000 check that they had written to the IRS had cleared. That was to be expected. There was nothing to have alerted them to the fact that the check had been intercepted by a criminal, altered, and diverted to the criminal.

22. Due to their age and relative lack of facility with online banking, Plaintiffs had repeatedly informed Truist that they had difficulty accessing copies of canceled checks online and repeatedly requested that Truist send them hard copies of their statements and canceled checks – as had been their banking experience throughout their adult lives. Truist repeatedly promised that it would provide its monthly statements and canceled checks to Plaintiffs in hard copy. Truist, however, failed to ever do so, thus interfering with Plaintiffs ability to scrutinize canceled checks drawn on their account.

23. On March 7, 2024, Mr. Narang, for the first time, learned of the fraudulent activity on his account while preparing documents for Plaintiffs' accountant in connection with his and his wife's upcoming tax filings. Upon learning that the IRS had not received Plaintiffs' December payment of $80,000, and because Truist does not provide hard copies of canceled checks, Mr. Narang visited his local Truist branch to obtain a copy of the canceled check. Mr. Narang immediately informed the local bank manager, Jasleen Ahuja, about the unauthorized transaction. Upon information and belief, Ms. Ahuja immediately

informed the main administrative Truist office. Truist assigned a claim number to Plaintiffs' claim, Claim C-2024-03071323.

24. Trust's bank manager, Ms. Ahuja, stated to Mr. Narang that Truist should not have honored the check, that it was obviously forged, and she was confident that Truist would make Plaintiffs whole promptly.

25. Between March 7 and March 12, Mr. Narang repeatedly spoke to the local bank manager, who assured him each time that the investigation was ongoing and that Plaintiffs would receive their funds back in 30-60 days.

26. Following a short-lived and perfunctory investigation, on March 12, 2024, Truist summarily declined the claim because, according to Truist, the unauthorized transaction had not been reported within the required time frame. Truist provided no additional details to Plaintiffs.

27. In addition to Truist, Mr. Narang reported the theft to the IRS and the Howard County Police Department.

28. After receiving the March 12 letter from Truist, Mr. Narang also filed a claim with the North Carolina Commissioner of Banks.

29. On or about April 23, 2024, Truist again responded to Mr. Narang via letter informing him that Truist's position remained unchanged. Truist again declined to reimburse Plaintiffs for the unauthorized transaction because, according to Truist, Mr. Narang reported the theft outside of the required timeframe, *i.e.*, within 30 days after the January account statement.

30. Plaintiffs' alleged failure report the theft within the 30-day reporting window invoked by Truist caused absolutely prejudice to Trust. That window ostensibly closed on Monday, February 19, 2024. By that time, the money was long gone. Truist could not have recovered it no matter how great its efforts. Nothing changed between then and March 7, 2024 – a mere 17 days later – when Mr. Narang reported the theft.

31. Conversely, had Truist acted with ordinary care when the fraudulently altered check was first presented to Truist, the check never would have been honored.

32. Truist's failure to exercise ordinary care before honoring the altered check amounted to bad faith. Moreover, Truist's invoking a meaningless 30-day reporting window, when it knew that the Narangs had repeatedly requested it to provide them with hard-copy canceled checks because they could not access them online, and it knew that it had not provided the Narangs with hard-copy canceled checks, constitutes bad faith. Truist knew that it had effectively denied the Narangs the practical ability to comply with the 30-day window. As noted above, compliance with the 30-day window – where the money was gone and unrecoverable months before that window closed – resulted in no prejudice whatsoever to Truist. Therefore, the loss should be entirely allocated to the bank. Additionally, Truist had already wrongfully honored the fraudulent check before the 30-day period to inform the bank regarding the unauthorized transaction had run. Thus, the 17-day "delay" did not result in any actual prejudice to Truist — the money was gone. Even if Plaintiffs had reported the loss on the 30th day, the money was no longer in the account and irretrievable.

## COUNTS

### COUNT I (TRUIST)- LACK OF ORDINARY CARE & GOOD FAITH
(Uniform Commercial Code)

29. Plaintiffs incorporate by reference the allegations contained in each of the numbered paragraphs of this complaint as if fully set forth in this paragraph.

30. Under the Uniform Commercial Code ("UCC"), Truist owed a duty of care to Plaintiffs to exercise ordinary care in issuing payment of a check.

31. Truist breached its duty of care by failing to exercise any care before issuing payment on Plaintiffs' clearly fraudulently altered check.  It is irrelevant that Plaintiffs did not notify Truist of the unauthorized transaction until several days after the 30-day time limit because Truist still owed a duty to Plaintiffs.  Moreover, Truist was not, in any way, prejudiced by Plaintiffs late disclosure as the funds had already been issued by Truist.

32. Plaintiffs suffered actual loss in the amount of $80,000.00 as the direct and proximate result of Truist's actions, or lack of action.

WHEREFORE, Plaintiffs, Satish Narang and Shashi Narang, demand a judgment against Defendant, Truist, in the amount of $80,000.00 in damages, plus any and all reasonable attorneys' fees, costs, expenses, and such further relief as this Court deems just and equitable.

### COUNT II (TRUIST) - BREACH OF CONTRACT

33. Plaintiffs incorporate by reference the allegations contained in each of the numbered paragraphs of this complaint as if fully set forth in this paragraph.

34. Plaintiffs had a contract with Truist under which Plaintiffs' reposed trust in Truist to handle their money with ordinary care  Truist agreed to exercise ordinary care in its dealings with Plaintiffs' bank accounts and transactions.

35. As evidenced above, Truist failed on all accounts to exercise even minimal care in issuing payment on Plaintiffs' fraudulently altered check.  In fact, Truist failed to exercise any care whatsoever.  As such, Truist breached its contract with Plaintiffs.

WHEREFORE, Plaintiffs, Satish Narang and Shashi Narang, demand a judgment against Defendant, Truist, in the amount of $80,000.00 in damages, plus any and all reasonable attorneys' fees, costs, expenses, and such further relief as this Court deems just and equitable.

## COUNT III (TRUIST) - BREACH OF FIDUCIARY DUTY

36. Plaintiffs incorporate by reference the allegations contained in each of the numbered paragraphs of this complaint as if fully set forth in this paragraph.

37. By virtue of Plaintiffs relationship with Truist, Plaintiffs reposed trust in Truist.  Specifically, Plaintiffs entrusted their money to Truist for safekeeping.  Truist accepted that duty.

38. Thus, Truist had an obligation to handle Plaintiffs' funds with care and to safekeep Plaintiffs' funds.  Truist agreed to refrain from self-dealing and to act with the care of a fiduciary.

39. Truist breached this duty by honoring the obviously forged check and therefore, it failed to handle Plaintiffs' funds with any care whatsoever.

40. Moreover, by shifting the loss to Plaintiffs, instead of bearing the loss itself, Truist engaged in a form of self-interest and self-dealing unbefitting a fiduciary. Particularly in light of the fact that the 30-day window is rendered meaningless in this case where the funds were already gone.

WHEREFORE, Plaintiffs, Satish Narang and Shashi Narang, demand a judgment against Defendant, Truist, in the amount of $80,000.00 in damages, plus any and all reasonable attorneys' fees, costs, expenses, and such further relief as this Court deems just and equitable.

### **COUNT IV (CHASE) - NEGLIGENCE**

41. Plaintiffs incorporate by reference the allegations contained in each of the numbered paragraphs of this complaint as if fully set forth in this paragraph.

42. Chase, as the depositary bank, and as a financial institution owes a duty not only to its customers but also to the drawer in a transaction where a customer presents a check to be cashed or deposited. Chase was, in a sense, the first line of defense in the fraudulent scheme by the criminal to cash a forged check.

43. Chase failed to exercise reasonable care in carrying out its function as a financial institution and to safeguard against obvious fraud by accepting and forwarding a request to draw on funds from Truist.

44. Plaintiffs suffered actual loss in the amount of $80,000.00 as the direct and proximate result of Chase's actions, or lack of action.

WHEREFORE, Plaintiffs, Satish Narang and Shashi Narang, demand a judgment against Defendant, Chase, in the amount of $80,000.00 in damages, plus any and all

reasonable attorneys' fees, costs, expenses, and such further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 24, 2024

Respectfully submitted,

/s/ John A. Bourgeois

John A. Bourgeois (Bar No. 11834)
Kelly A. Robier (Bar No. 30938)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269
jbourgeois@kg-law.com
krobier@kg-law.com

*Counsel for Plaintiffs*