IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SATISH K. NARANG, *et al.*, | * * * * | |
| Plaintiffs, | * * | Civil Case No.: SAG-24-1826 |
| v. | * * | |
| TRUIST BANK, | * * | |
| Defendant. | * * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Satish K. and Shashi R. Narang ("Plaintiffs") filed this lawsuit against Defendant Truist Bank ("Truist"), asserting a single count of "Lack of Ordinary Care and Good Faith" in violation of Maryland's Uniform Commercial Code (UCC) § 4-401. ECF 6. The parties have completed discovery, and Truist has filed a motion seeking summary judgment. ECF 29. This Court has reviewed the motion, Plaintiffs' opposition, ECF 35, and Truist's reply, ECF 40. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Truist's motion for summary judgment must be DENIED.

I. **BACKGROUND**

The Court construes the facts, which are largely undisputed, in the light most favorable to Plaintiffs as the non-moving party. Plaintiffs are a retired couple who are 87 and 82 years of age. ECF 29-3 (Satish Dep.) at 12:4, ECF 29-4 (Shashi Dep.) at 9:3. They have two joint accounts with Truist, a money market and a checking account for personal use. ECF 29-3 at 15:16–17, 58:4–5. When Plaintiffs opened their checking account, the bank presented them with "a piece of paper" to sign to open the account. *Id.* at 30:14–18. That document was the Bank Services Agreement

("BSA"), which contains a variety of provisions printed in a small font. ECF 29-7, 29-8. The relevant provision here reads:

> **Duty to Review Account Statement.** You agree to review your account statement within thirty (30) days from the statement date for errors or unauthorized transactions in non-electronic items on your account statement. . . . With respect to non-electronic fund transfer transactions, because you are in the best position to discover an unauthorized signature, any alterations that include an alteration to the amount of the check, a counterfeit item, or other error on the statement itself (including any item improperly charged to your account, any deposit not credited to your account, any unauthorized transaction, or any incorrect or improper amount, fee or interest calculation) you agree that, without regard to care or lack of care by you or the Bank, and except as otherwise may be required by applicable law, **we will not be liable for any such items or transactions and you will be precluded from any recovery from the Bank if you have not reported such items or transactions in writing to the Bank within thirty (30) days from the statement date of the earliest statement containing those items or transactions.**

ECF 29-8 at 24.[1]

Plaintiffs conduct their banking at their local branch and have developed a relationship with their bank manager, Jasleen Ahuja. ECF 29-3 at 56:20–22. Plaintiffs would visit the bank in-person to ask for their statements and copies of their checks, because they did not subscribe at the time to the service providing images of checks with mailed paper statements. *Id.* at 55:1-8; ECF 35-1 at 131:7–13. Plaintiffs used online banking periodically for limited purposes but were unfamiliar with the features providing access to statements and online check images. *Id.* at 62:20–22, 63:4–17; ECF 29-4 at 16:1-5, 18:6-11.

In December, 2023, Mr. Narang mailed check number 1895 for $80,000 to the Internal Revenue Service (IRS) to satisfy his tax obligations. ECF 6 ¶ 11. Truist authorized payment on the check on December 20, 2023. ECF 36-1. But when Mr. Narang called the IRS in early January,

---

[1] Page references to this Exhibit and other non-deposition exhibits refer to the pagination in the ECF header at the top of the page. Deposition page references use the pagination on the deposition transcript.

2024 to confirm that his taxes had been paid, the IRS told him that it had not received the $80,000 payment. ECF 29-3 at 68:18–21, 92:5–13. Mr. Narang then asked Ms. Ahuja whether check 1895 had been cashed and was told that it had. ECF 35-1 at 85:3–7. Mr. Narang received a mailed bank statement, dated January 19, 2024, showing that check 1895 had been paid on December 20, 2023 in the amount of $80,000. ECF 30-2.

On March 7, 2024, Plaintiffs visited Truist and asked for a copy of their statement, including the image of the $80,000 check. ECF 29-3 at 105:1-13. When Ms. Ahuja provided a copy of the check, Plaintiffs realized that it had been altered before it was presented for payment. *Id.* at 93:15–17. The check was now made payable to "Oscar Guzman" in writing clearly different from the other writing on the check, the date on the check states only "12" and is incomplete, and the memo line is blank. ECF 35-6.

Ms. Ahuja assisted Plaintiffs with opening a claim, and Truist's Fraud Department conducted an investigation. ECF 29-10 (Ahuja Dep.) at 28:7–9; ECF 35-8. On March 12, 2024, Truist confirmed that the check was fraudulent but denied Plaintiffs' claim on the grounds that they failed to provide timely notice under the BSA within 30 days of the date they received their statement containing the fraudulent item. ECF 35-8. Because Truist offered no recourse to Plaintiffs, this lawsuit ensued.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*,

810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment is warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. DISCUSSION

The parties' dispute turns on the validity and applicability of the 30-day notice provision in the BSA. Both parties agree that Maryland's UCC § 4-406(f) precludes a customer from asserting a claim against a bank where the customer fails to report the issue to the bank within 12 months of the relevant statement or items being made available to the customer. But UCC § 4-103(a) allows that provision to be "varied by agreement," so long as the modifications "are not manifestly unreasonable." Truist's BSA modifies that 12-month notice period to a 30-day notice period. ECF 29-8 at 24.

Plaintiffs first argue that the BSA is a contract of adhesion, because it is "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms."[2] *Freedman v. Comcast Corp.*, 190 Md. App. 179, 209 (2010) (quoting *Walther v. Sovereign Bank*, 386 Md. 412, 430 (2005)). While courts analyze such contracts "with some special care," *White v. Simard*, 1152 Md. App. 229, 250 (2003), *aff'd*, 383 Md. 257 (2004), contracts of adhesion are neither invalid nor unenforceable. *See Walther*, 386 Md. at 430 (2005). In fact, banking agreements, which can be contracts of adhesion, are routinely enforced in Maryland courts. *See, e.g.*, *Lema v. Bank of Am., N.A.*, 375 Md. 625, 635–36 (2003). Courts refuse to enforce a contract of adhesion only where its terms are unconscionable. *See Brown v. Brown's Md. Motors, Inc.*, 607 F. Supp. 3d 620, 631 (D. Md. 2022). A provision must be "both procedurally and substantively unconscionable" to be unenforceable." *Id.* at 630.

---

[2] Truist contests the characterization of the BSA as a contract of adhesion, noting that Plaintiffs could have chosen to bank with a number of other institutions and did not have to accept the BSA's terms. ECF 40 at 3 n.1. For the purposes of this motion, this Court accepts, without deciding, Plaintiffs' characterization of the contract as one of adhesion, because that label does not make its terms unenforceable.

Substantive unconscionability requires a showing that the provision was such that "no man in his senses and not under delusion would make [it] on the one hand, and [that] no honest and fair man would accept [it] on the other." *Walther*, 386 Md. at 426 (quoting Restatement (Second) of Contracts § 208 cmt. b (1981)). The 30-day notice provision does not meet that high bar.

Plaintiffs also contend, though, that the BSA's modification is "manifestly unreasonable" and thus not a valid amendment to the UCC's 12-month notice period. In support, they contend that Plaintiffs are "elderly, not proficient with technology, and unsophisticated consumers with limited ability to navigate complex banking systems." ECF 35 at 10. Truist responds by citing evidence of Mr. Narang's use of Truist's online banking system, *see, e.g.*, ECF 29-1 at 8 (noting that Mr. Narang sent a letter to Truist stating, "The bank provides copies of the cancelled checks through electronic notifications after a check is cashed. I monitor the notifications via the Truist App."), and Plaintiffs' level of education and professional experiences, *see* ECF 40 at 4 (noting that Mr. Narang worked for Wells Fargo Bank for 35 years and Mrs. Narang is a retired pediatrician). It is clear, then, that there is a genuine dispute of fact related to Plaintiffs' sophistication and technological proficiency.

Plaintiffs cite to two out-of-district cases for the proposition that "manifest unreasonableness" requires consideration of the individual circumstances of the consumer. In *Clemente Bros. Contracting Corp. v. Hafner-Milazzo*, 23 N.Y.3d 277 (2014), a corporate entity, Clemente Bros., learned that its bookkeeper had embezzled from its accounts over two-years. When Clemente Bros. advised the bank of the loss, the bank declined to reimburse the lost funds because Clemente Bros.'s depositor agreement had shortened the one-year notice requirement to 14 days. *Id.* at 283. While the court determined that it was reasonable to expect a company "with numerous employees and hundreds of thousands of dollars under its control" to monitor its

accounts and provide notice within 14 days, it noted in dicta that "[i]t could well be unreasonable for banks to use contracts of adhesion to impose an exacting 14-day limit on unsophisticated customers . . . including, for example, the elderly." *Id.* at 289. It continued, "But whether it would be manifestly unreasonable for these customers to be subject to a 14-day notice period, as opposed to a 30- or 60-day period, is a question for a later day." *Id.* at 290.

In the other case Plaintiffs cite, *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212 (S.D.N.Y. 2022), Mr. Pincover, a customer over 80 years old who lived in a nursing home, relied on paper statements to monitor his bank accounts. Without Mr. Pincover's knowledge, a thief changed his mailing address and then stole hundreds of thousands of dollars from his accounts using various methods. *Id.* at 218. When he discovered the theft, Mr. Pincover went to a bank branch in person to report the loss. *Id.* at 219. The bank denied some of his requested reimbursement. *Id.* The court denied the bank's motion to dismiss Mr. Pincover's claim, reasoning that the bank had not made his account statements and items "available to the customer," who had not received them due to the unauthorized change in his mailing address. *Id.* at 223–25. The *Pincover* court further reasoned that, "on a motion to dismiss," it could not find that the 30-day period was "not manifestly unreasonable," given Mr. Pinconver's age, lack of available kin, and lack of facility with online banking. *Id.* at 226.

In response to the two cases cited by Plaintiffs, Defendants cite to a longer list of out-of-district cases in which courts have rejected plaintiffs' contentions that the 30-day notice provision was manifestly unreasonable. *See* ECF 40 at 6–7 (citing cases). Defendants further contend that such a "blanket" approach is warranted to the question of "manifest unreasonableness," as case-by-case analysis would undermine the goal of uniformity in the UCC. ECF 40 at 7–8.

7

The question, then, seems to be whether assessment of whether a contractual provision is "manifestly unreasonable" is a question of law for this Court or a fact-dependent mixed question better suited for a jury. In considering that issue, this Court is mindful that, in most contexts outside of constitutional questions, "reasonableness" is a jury question. *See, e.g.*, *Small v. WellDyne, Inc.*, 927 F.3d 169, 173 (4th Cir. 2019) ("[T]he standard . . . of reasonable care[] usually requires a jury determination.") (quoting *Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 401 (2001)); *Wells v. G.R. Assocs., Inc.*, No. Civ.A. 00–1408–A, 2000 WL 33199263, at *1 (E.D. Va. Nov. 22, 2000) (determining that "[w]hat is 'reasonable' is a question for the jury" in the context of a law providing that at-will employees can be discharged "upon reasonable notice"); *but see Armstrong v. Hutcheson*, 80 F.4th 508, 514 (4th Cir. 2023) ("But unlike in tort law, in Fourth Amendment cases, objective reasonableness is not a jury question—it is a question of law."). "Manifest unreasonableness," then, also appears to be a question appropriate for jury resolution.

This Court acknowledges that submitting the question to a jury could result in one bank receiving inconsistent adjudications on the enforceability of its notice provision from customer to customer. But the "uniform" notice period prescribed by the UCC is 12 months, not 30 days. While it is clear that modification to a 30-day period is not uncommon and several courts have deemed it to be "not manifestly unreasonable," whether it is "manifestly unreasonable" in the circumstances of an agreement between a bank and a particular customer appears to be a case-

8

specific one. Given that, in this case, there are disputes of fact relevant to that question, summary judgment would be inappropriate.[3]

Of course, while persuading a jury that the BSA's 30-day notice provision was "manifestly unreasonable" will be necessary for Plaintiffs to prevail, it will not be sufficient to entitle them to recover. They will also have to prove that Truist failed to act in good faith as required by UCC § 4-103 when it processed the check for payment. But because there appear to be issues of fact pertinent to that dispute as well (such as whether the defects in the counterfeit check could be "detected by a reasonable person," *see* ECF 29-8 at 25), the case must proceed to trial.

## IV.  CONCLUSION

For the reasons stated above, Truist's motion for summary judgment, ECF 29, will be denied. A separate Order follows.

Dated: November 4, 2025                                                                  /s/
                                                                                Stephanie A. Gallagher
                                                                                United States District Judge

---

[3] Plaintiffs make an alternative argument that, if the 30-day notice period is upheld, they complied with its dictates by providing immediate notice when the counterfeit check was provided to them on March 7, 2024. ECF 35 at 14–15. That argument is unavailing. The BSA's notice period commences not upon actual receipt of the check copy, but by "the statement date of the earliest statement containing those items or transactions. ECF 29-8 at 24. That date was January 19, 2024. ECF 30-2. Plaintiffs knew, following receipt of their January 19, 2024 statement and their early January discussion with the IRS, that the check had been paid and the IRS had not received it. Prompt investigation at that point would have resulted in discovery of the issue well within the 30-day notice period. It is clear that, if the 30-day notice period is enforceable, Plaintiffs failed to make timely notice.